William J. Penisten, Esq [SBN 266857]
wpenisten@morrow-white.com
MORROW & WHITE
535 Anton Boulevard, Suite 1150
Costa Mesa, CA 92626
Telephone:  (714) 979-7999
Toll-Free:    (855) 265-4926
Facsimile:   (714) 979-7779

EDWARD F. RUBERRY (Ill. No. 2411547)
ed.ruberry@ruberry-law.com
ROSTYSLAW J. SMYK (Ill. No. 6255495)
ross.smyk@ruberry-law.com
RUBERRY STALMACK & GARVEY, LLC
10 South LaSalle Street, Suite 1800
Chicago, Illinois 60603
Telephone:  (312) 466-8050
Facsimile:   (312) 466-8055

Attorneys for Plaintiff
ASSOCIATED INDUSTRIES INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATED INDUSTRIES INSURANCE COMPANY<br><br>              Plaintiff,<br><br>       vs.<br><br>AGENCY, SAN JOAQUIN HILLS TRANSPORTATION CORRIDOR AGENCY, RHONDA REARDON, MICHAEL KRAMAN, CRAIG YOUNG, SCOTT SCHOEFFEL, ROSS CHUN , PENNY DAVIDI BORSUK, individually and as representative of a Certified Class of Persons, DAVID COULTER, individually and as representative of a Certified Class of Persons, EBRAHIM E. MAHDA, individually and as | Case No.:  2:18-cv-08418<br>:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br><br>Action Filed:<br>Trial Date:   Not set. |

representative of a Certified Class of
Persons, TODD QUARLES, individually
and as representative of a Certified Class
of Persons, TODD CARPENTER,
individually and as representative of a
Certified Class of Persons, LORI MYERS,
individually and as representative of a
Certified Class of Persons, DAN GOLKA,
individually and as representative of a
Certified Class of Persons, and JAMES
WATKINS, individually and as
representative of a Certified Class of
Persons,

                    Defendants.

Plaintiff, Associated Industries Insurance Company, Inc., for its Complaint pursuant to 28 U.S.C. § 2201(a) and Fed. R. Civ. Proc. Rule 57, states as follows:

1.     Associated Industries Insurance Company ("Associated") seeks a declaration pursuant to 28 U.S.C. §2201(a) that the insurance policies Associated issued to Foothill/Eastern Transportation Corridor Agency ("FTCA") and the San Joaquin Hills Transportation Corridor Agency ("SJHTCA") (collectively, "the TCAs") do not provide any coverage for the claims made by Penny Davidi Borsuk, David Coulter, Ebrahim E. Mahda, Todd Quarles, Todd Carpenter, Lori Myers, Dan Golka, James Watkins (collectively, the "Underlying Named Plaintiffs") and the class of persons this Court has approved them to represent.

**NATURE OF THE CASE**

2.     This is a declaratory judgment action seeking an adjudication of the rights and obligations, if any, of the parties hereto under: (a) an insurance policy Associated issued to FTCA with an effective date of September 29, 2011, (b) a materially-identical insurance policy Associated issued to SJHTCA with an effective date of September 29, 2011, and (c) annual renewals of those policies that are, with limited exceptions, materially identical to the original policies.

3. The Underlying Named Plaintiffs have been approved, in an action pending before this Court, to serve as the representatives of a certified class of persons seeking relief against the TCAs and several officers and/or directors of the TCAs pursuant to California Streets and Highways Code § 31490 ("Section 31490"). The underlying class action, hereinafter the "Underlying Action," is styled *Borsuk, et al. v. Foothill/Eastern Transportation Corridor Agency, et al.*, No. 8:16-cv-262 AG (JCGx) (C.D. Cal.) and is also called *In re Toll Road Litigation*. The Underlying Action was first filed on October 2, 2015, in California state court, before being removed to this Court on February 16, 2016. The currently operative complaint in the Underlying Action is the "Corrected First Amended Consolidated Class Action Complaint" ("the Underlying Complaint"). A copy of the Underlying Complaint is attached hereto as Exhibit 1.

4. The Underlying Complaint challenges the TCAs' long-established policies and procedures regarding the collection of fines for unpaid road tolls. These policies and procedures pre-date the inception of policies issued by Associated to the TCAs (the "Associated Policies").

5. The Associated Policies do not provide any coverage for the Underlying Action because the claims do not fall within the Insuring Agreements of the Associated Policies, are excluded by one or more exclusions, and/or seek relief for which California law and/or public policy bars insurance coverage. Associated, therefore, seeks a declaration that the Associated Policies do not provide any coverage for the Underlying Action.

### THE PARTIES

6. Plaintiff, Associated, is, and at all relevant times was, an insurance company organized and existing under the laws of the State of Florida, with its principal place of business in the State of Florida.

**COMPLAINT FOR DECLARATORY JUDGMENT**
G:\18-073 Associated Industries v. Toll Roads\Pleading\Complaint.doc

7.     Defendant FTCA is, and at all relevant times was, an agency created by an act of the California legislature, with its principal place of business in California.

8.     Defendant SJHTCA is, and at all relevant times was, an agency created by an act of the California legislature, with its principal place of business in California.

9.     Defendant Ms. Reardon is a citizen of California and FTCA's former Chairperson.

10.     Defendant Mr. Kraman is a citizen of California and is, or was, the Chief Executive Officer of the FTCA, the SJHTCA, or both.

11.     Defendant Mr. Young is a citizen of California and was the Chairman of the FTCA.

12.     Defendant Mr. Schoeffel is a citizen of California and was the Chairman of the SJHTCA from 2011 to 2012, and again from 2014 to 2015.

13.     Defendant Mr. Chun is a citizen of California and is, or was, the Chairman of the SJHTCA.

14.     Defendants Ms. Borsuk, Mr. Coulter, Mr. Mahda, Mr. Quarles, Mr. Carpenter, Ms. Myers, Mr. Golka, and Mr. Watkins are all citizens of the State of California whom this Court has approved to act as representatives of a class of persons seeking relief against the TCAs, Ms. Reardon, Mr. Kraman, Mr. Young, Mr. Schoeffel, Mr. Chun (collectively the "TCA Defendants") and others pursuant to Section 31490.

## JURISDICTION AND VENUE

15.     Subject matter jurisdiction exists under 28 U.S.C. § 1332(a)(1) because the amount in controversy, exclusive of interest and costs, exceeds $75,000 and because this action is between citizens of different States.

16.     The amount in controversy exceeds $75,000, exclusive of interest and costs, because: (a) the limit of liability of each of the Associated Policies exceeds

-4-

G:\18-073 Associated Industries v. Toll Roads\Pleading\Complaint.doc

$75,000; (b) the Underlying Named Plaintiffs allege that the TCA Defendants committed thousands of violations of the class members' privacy rights in violation of Section 31490; and (c) the Underlying Named Plaintiffs, on behalf of themselves and the class they represent, seek to have this Court enter a judgment against the TCA Defendants that includes the $2,500 or $4,000 "per violation" statutory penalty set forth in Section 31490.

17.    There is complete diversity of citizenship between the Plaintiff, Associated, and all Defendants because Associated is a Florida corporation that has its primary place of business in Florida, while all named defendants are citizens of California.

18.    An actual controversy exists between Associated and each of the Defendants named herein, and, therefore, this Court may declare the rights and other legal relations of the parties hereto pursuant to 28 U.S.C. § 2201(a) and *Federal Rule of Civil Procedure* 57.

19.    This Court has general personal jurisdiction over each of the named defendants because they are all citizens of California.

20.    Venue is proper under 28 U.S.C. §1391(b)(1) and §1392(b)(2) because the TCAs are within the Central District of California, and because a substantial part (if not all) of the events or omissions giving rise to this Complaint occurred within the Central District of California.

## THE ASSOCIATED POLICIES

21.    Associated issued its first policy to FTCA (Participation No. 196, Policy No. PAC 1000001 00), for the September 29, 2011-2012 policy period.  It is referred to hereafter as the "Original FTCA Policy," and a copy is attached hereto as Exhibit 2.

22.    Associated issued renewal policies to FTCA with the same material terms and conditions as the Original FTCA Policy for the policy periods of: September 29, 2012-2013(No. PAC 1000001 01); September 29, 2013-2014 (No.

PAC 1000001 02); September 29, 2014-2015 (No. PAC 1000001 03); September 29, 2015-2016 (No. PAC 1000001 04); and September 29, 2016-2017 (No. PAC 1000001 05).   These policies are collectively referred to herein as the "FTCA Renewal Policies."   Copies of the FTCA Renewal Policies are attached hereto as Exhibits 3 through 7. The Original FTCA Policy and the FTCA Renewal Policies are collectively referred to herein as the "FTCA Policies."

23.     Associated issued its first policy to SJHTCA (Participation No. 420, Policy No. PAC 1000001 00) for the September 29, 2011-2012 policy period.  It is referred to hereafter as the "Original SJHTCA Policy," and a copy of the Original SJHTCA Policy is attached as Exhibit 8.

24.     Associated issued renewal policies to SJHTCA with the same material terms and conditions as the Original SJHTCA Policy for the policy periods of: September 29, 2012-2013 (No. PAC 1000001 01); September 29, 2013-2014 (No. PAC 1000001 02); September 29, 2014-2015 (No. PAC 1000001 03); September 29, 2015-2016 (No. PAC 1000001 04); and September 29, 2016-2017 (No. PAC 1000001 05).  These policies are collectively referred to as the "SJHTCA Renewal Policies." Copies of the SJHTCA Renewal Policies are attached hereto as Exhibits 9 through 13. The Original SJHTCA Policy and the SJHTCA Renewal Policies are collectively referred to herein as the "SJHTCA Policies."

25.     The previously defined "Associated Policies" consist of the SJHTCA Policies and the FTCA Policies.

26.     The "**INSURING AGREEMENT**," and "**DEFINITIONS**" sections of each of the Associated Policies are identical to the "**INSURING AGREEMENT**," and "**DEFINITIONS**" sections of each of the other Associated Policies.

27.     Section I of each of the Associated Policies sets forth the following "**INSURING AGREEMENT**":

**COMPLAINT FOR DECLARATORY JUDGMENT**
G:\18-073 Associated Industries v. Toll Roads\Pleading\Complaint.doc

The "Company" will pay on behalf of the "Insured" the "Ultimate Net Loss" that the "Insured" becomes legally obligated to pay as "Damages" because of "Personal Injury", "Property Damage", "Public Officials Errors and Omissions", "Non-Profit Directors and Officers Liability", or "Employment Practices" Liability to which this insurance applies.

This insurance applies to "Personal Injury", "Property Damage", "Public Officials Errors and Omissions", "Non-Profit Directors and Officers Liability", or "Employment Practices" Liability only if:

(1)    The "Personal Injury", "Property Damage", "Public Officials Errors and Omissions", "Non-Profit Directors and Officers Liability", or "Employment Practices" Liability is caused by an "Occurrence" that takes place in the "Coverage Territory"; and

(2)    The "Personal Injury", "Property Damage", "Public Officials Errors and Omissions", "Non-Profit Directors and Officers Liability", or "Employment Practices" Liability is caused by an "Occurrence" during the "Policy Period". No other obligation to pay any additional sums or perform acts or services is covered.

28.    Section VII of each of the Associated Policies sets forth the following "**DEFINITIONS**":

(F)    "Damages" means monetary compensation for death (or "Bodily Injury") and for care and loss of services resulting from "Personal Injury" and for damage to and loss of use of property resulting from "Property Damage", and losses for "Public Officials Errors and Omissions" and "Non-Profit Directors and Officers Liability" including "Defense Costs".

"Damages" as respects "Employment Practices" only means a monetary judgment, monetary award, or a monetary settlement, including "Defense Costs", which the "Insured" is obligated to pay.

\*\*\*

(P)    "Occurrence" means:

(1)    With respects to "Personal Injury" described in Definition R.1. and "Property Damage", an accident,

**COMPLAINT FOR DECLARATORY JUDGMENT**

which is neither expected nor intended from the "Insured's" conduct, including continuous or repeated exposure to substantially the same general harmful conditions which results in "Bodily Injury" or "Property Damage". All such exposure to substantially the same general conditions will be considered as arising out of one "Occurrence".

(2)  With respect to "Personal Injury" described in Definition R.2 through R.9, all "Damages" arising out of substantially the same "Personal Injury" regardless of frequency, repetition, the number or kind of offenses, or number of claimants, will be considered as arising out of one "Occurrence".

(3)  With respect to "Public Officials Errors and Omissions" or "Non-Profit Directors and Officers Liability", an act, omission to act or failure to act during the "Policy Period" which results in injury or "damage".

(4)  With respect to "Employment Practices" liability, an act, omission to act or failure to act during the "Policy Period" resulting from "Employment Practices."

Only one policy issued by the "Company" and one limit of insurance is applicable to any one "Occurrence".

\* \* \*

(R)  "Personal Injury" means:

(6)  A publication or utterance that violates a person's right of privacy …

\* \* \*

(V)  "Public Officials Errors and Omissions" means any actual or alleged negligent action or inaction, mistake, misstatement, error, neglect, inadvertence, or omission by the "Insured" in the discharge of duties on behalf of an "Insured" entity.

\* \* \*

(AA)  "Ultimate Net Loss" means the sums for which the "Insured" is legally liable to pay as "Damages" by reason of a judgment or

**COMPLAINT FOR DECLARATORY JUDGMENT**

settlement, and shall include all costs, including "Defense Costs", arising out of an "Occurrence".

However, "Ultimate Net Loss" shall not include civil or criminal fines or penalties imposed by law, punitive or exemplary "Damages", the multiplied portion of multiplied "Damages", taxes and any amount or which the "Insureds" are not financially liable or which are without legal recourse to the "Insureds", or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

29.   In addition, Section VI of each of the Associated Policies sets forth the following **"EXCLUSIONS,"** to which provide that "[t]his Policy does not apply:

\*\*\*\*

(CC)   To any liability that is provided for or covered under any subsequent, replacement or renewal policy or policies issued by the "Company", and/or any other affiliated AmTrust Financial Services, Inc. Company.

\*\*\*

(II)   To any liability arising out of, caused in whole or in part by, contributed to, or in any way relating to or in connection with an "Occurrence" which has first occurred or begun prior to the effective date of this policy, regardless of whether repeated or continued exposure to conditions which were a cause of such damages occur during the "Policy Period" and cause additional, progressive or further damages, all of which is excluded from coverage. This exclusion shall apply whether or not the "Insured's" legal obligation to pay damages has been established as of the inception date of this policy. However, this exclusion does not apply to coverages afforded to the "Insureds" listed in the Nose Cover And Extended Reporting Period endorsement, if attached, for damages arising out of "Public Officials Errors and Omissions" Liability, "Non-profit Directors and Officers Liability" or "Employment Practices" Liability.

**COMPLAINT FOR DECLARATORY JUDGMENT**

G:\18-073 Associated Industries v. Toll Roads\Pleading\Complaint.doc

## THE UNDERLYING ACTION

30.     The TCAs manage several toll roads in and around Orange County, California.  In the Underlying Action, the Named Underlying Plaintiffs sought certification of two classes.  One of these proposed classes would have sought the disgorgement of fines the TCAs allegedly collected. According to the Underlying Named Plaintiffs, the fines were unconstitutionally and/or otherwise unlawfully excessive.  In a July 31, 2018 Order, the Court granted the TCA Defendants summary judgment on the Underlying Named Plaintiffs' claims that the fines the TCAs collected were unconstitutional or excessive.

31.     In addition, however, the Underlying Named Plaintiffs seek the imposition of statutory penalties under Section 31490 for alleged violations of the privacy rights of a now-certified "Privacy Class" of customers using the toll roads.

32.     Section 31490 provides, in relevant part, as follows:

> (q) (1) In addition to any other remedies provided by law, a person whose personally identifiable information has been knowingly sold or otherwise provided in violation of this section may bring an action to recover either actual damages or two thousand five hundred dollars ($2,500) for each individual violation, whichever is greater, and may also recover reasonable costs and attorney's fees.
>
> (2) A person whose personally identifiable information has been knowingly sold or otherwise provided three or more times in violation of this section may bring an action to recover either actual damages or four thousand dollars ($4,000) for each individual violation, whichever is greater, and may also recover reasonable costs and attorney's fees.

33.     In their Motion for Class Certification filed in the Underlying Action (attached hereto as Exhibit 14), the Underlying Named Plaintiffs argued that, under Section 31490, they were "eligible to receive statutory damages of between $2500 and $4000 for each violation of § 31490."  Based on this premise, the Underlying Named Plaintiffs posited that "[s]tatutory damages here [are] a straightforward matter of tallying up the number of violations per class members from Defendants' records, and multiplying by the applicable penalty amount."

34.     On July 31, 2018, the Court entered in the Underlying Action an "Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification and Denying Defendants' Motion to Exclude" (the "Class Certification Order").  The Class Certification Order is attached hereto as Exhibit 15.

35.     In the Class Certification Order, the Court certified, for litigation of the Section 31490 claim, a class consisting of the following persons:  "All consumers who used California Highway Routes 71, 133, 241, 261 between April 13, 2015 and now, or who used the 91 Express Lanes between June 29, 2015 and now," and had their personally identifiable information ("PII") made available to another transportation agency or sent to certain other persons including, but not limited to, the California DMV.  This class of persons is hereinafter referred to as the "Certified Privacy Class."

36.     In the Class Certification Order, the Court recognized that the Underlying Named Plaintiffs "seek to recover statutory damages for the class."

**FIRST CAUSE OF ACTION -- DECLARATORY JUDGMENT**
**THE UNDERLYING ACTION DOES NOT FALL WITHIN THE**
**INSURING AGREEMENTS OF THE ASSOCIATED POLICIES BECAUSE**
**THE UNDERLYING ACTION DOES NOT SEEK**
**"ULTIMATE NET LOSS"**

37.     Associated repeats, re-alleges and incorporates by reference paragraphs 1 through 36 above as if each and every allegation contained in those paragraphs were set forth in full herein.

38.     The **INSURING AGREEMENT** of each of the Associated Policies states, in relevant part, that Associated "will pay on behalf of the 'Insured' the 'Ultimate Net Loss' that the 'Insured' becomes legally obligated to pay as 'Damages' because of 'Personal Injury' … to which this insurance applies."

39.     The Associated Policies define "Ultimate Net Loss" or "penalties imposed by law."

40.     The judgment sought in the Underlying Action on behalf of the Certified Privacy Class of the statutory $2,500 or $4,000 for each violation of Section 31490 constitutes a penalty imposed by law.

41.     Therefore, the relief the Certified Privacy Class seeks in the Underlying Action is not "Ultimate Net Loss" as the Associated Policies define that term.

42.     Because the Certified Privacy Class does not seek "Ultimate Net Loss," the relief the Certified Privacy Class seeks in the Underlying Action does not fall within the **INSURING AGREEMENT** of any of the Associated Policies.

43.     Because the relief the Certified Privacy Class seeks in the Underlying Action does not fall within the **INSURING AGREEMENT** of any of the Associated Policies, Associated is entitled to a declaration that it has no duty to provide coverage to the TCA Defendants in connection with the Underlying Action.

**SECOND CAUSE OF ACTION -- DECLARATORY JUDGMENT**
**THE UNDERLYING ACTION DOES NOT FALL WITHIN THE**
**INSURING AGREEMENTS OF THE ASSOCIATED POLICIES BECAUSE**
**THE UNDERLYING ACTION DOES NOT SEEK "DAMAGES"**

44.     Associated repeats, re-alleges and incorporates by reference paragraphs 1 through 43 above as if each and every allegation contained in those paragraphs were set forth in full herein.

45.     The **INSURING AGREEMENT** of each of the Associated Policies states, in relevant part, that Associated "will pay on behalf of the 'Insured' the 'Ultimate Net Loss' that the 'Insured' becomes legally obligated to pay as 'Damages' because of 'Personal Injury', [or] 'Public Officials Errors and Omissions' … to which this insurance applies."

**COMPLAINT FOR DECLARATORY JUDGMENT**

46.     The Associated Policies define "Damages" to mean "monetary compensation for death (or 'Bodily Injury') and for care and loss of services resulting from 'Personal Injury.'"

47.     The Associated Policies define "Personal Injury" to include certain specific injuries and offenses, including, in relevant part, "[a] publication or utterance that violates a person's right of privacy."

48.     To the extent that the Underlying Complaint alleges "Personal Injury" as the Associated Policies define that term, the relief sought in the Underlying Action on behalf of the Certified Privacy Class does not constitute monetary compensation for death (or "Bodily Injury") or for care and loss of services.

49.     To the extent that the Underlying Complaint alleges "Personal Injury" as the Associated Policies define that term and to the extent that the relief sought in the Underlying Action on behalf of the Certified Privacy Class is monetary compensation, the relief sought in the Underlying Action on behalf of the Certified Privacy Class does not seek "monetary compensation for care and loss of services."

50.     The Associated Policies further define "Damages" to mean: "losses for 'Public Officials Errors and Omissions.'"

51.     To the extent that the Underlying Complaint alleges "Public Officials Errors and Omissions" as the Associated Policies define that term, the Underlying Action does not seek the recovery of any "losses" by the Underlying Named Plaintiffs or by members of the Certified Privacy Class.

52.     Therefore, the relief sought by the Certified Privacy Class in the Underlying Action does not constitute "Damages" as that term is defined in the Associated Policies.

53.     Because the Certified Privacy Class does not seek "Damages" within the meaning of the Associated Policies, the relief sought in the Underlying Action does not satisfy the **INSURING AGREEMENT** of any of the Associated Policies.

**COMPLAINT FOR DECLARATORY JUDGMENT**
G:\18-073 Associated Industries v. Toll Roads\Pleading\Complaint.doc

54.     Because the relief the Certified Privacy Class seeks in the Underlying Action does not fall within the **INSURING AGREEMENT** of any of the Associated Policies, Associated is entitled to a declaration that it is under no duty to provide coverage to the TCA Defendants in connection with the Underlying Action.

**THIRD CAUSE OF ACTION -- DECLARATORY JUDGMENT**

**EXCLUSION II BARS COVERAGE**

55.     Associated repeats, realleges and incorporates by reference paragraphs 1 through 54 above, as if each and every allegation contained in those paragraphs were set forth in full herein.

56.     Exclusion II of each of the Associated Policies bars coverage for liability:

> "arising out of, caused in whole or in part by, contributed to, or in any way relating to or in connection with an 'Occurrence' which has first occurred or begun prior to the effective date of this policy, regardless of whether repeated or continued exposure to conditions which were a cause of such damages occur during the 'Policy Period' and cause additional, progressive or further damages, all of which is excluded from coverage.  This exclusion shall apply whether or not the 'Insured's' legal obligation to pay damages has been established as of the inception date of this policy…."

57.     The effective date of both the Original FTCA Policy and the Original SJHTCA Policy is September 29, 2011.

58.     The Underlying Complaint alleges that the purported violation of the privacy rights of the Underlying Named Plaintiffs and the members of the Certified Privacy Class first occurred prior to September 29, 2011, and occurred in substantially the same manner both before and after September 29, 2011.

59.     In the Underlying Action, the TCAs have admitted to having used the same procedures and also have admitted to having disseminated PII to the same entities since 2009.   Examples of such admissions include a declaration by an authorized representative of the TCAs (attached hereto as Exhibit 16) as well as an answer to an interrogatory (attached hereto as Exhibit 17).

60.     Therefore, to the extent that the Underlying Complaint alleges one or more "Occurrences" as the Associated Policies define that term, the Underlying Action seeks to impose upon the TCA Defendants liability that arises out of, was caused in whole or in part by, was contributed to, or in some way related to, or was connected with, an "Occurrence" which first occurred or began prior to the effective dates of each of the Associated Policies.

61.     Because the Underlying Action seeks to impose upon the TCA Defendants liability that arises out of, was caused in whole or in part by, was contributed to, or in some way related to, or was connected with, an "Occurrence" which first occurred or began prior to the effective dates of each of the Associated Policies, Exclusion II bars any and all coverage that could otherwise apply under the Associated Policies for the claims made in the Underlying Action.

62.     Because Exclusion II to the Associated Policies bars coverage for the claims made in the Underlying Action, Associated is entitled to a declaration that it is under no duty to provide coverage to the TCA Defendants in connection with the Underlying Action.

## FOURTH CAUSE OF ACTION
## DECLARATORY JUDGMENT BASED ON
## CALIFORNIA INSURANCE CODE § 533

63.     Associated repeats, re-alleges and incorporates by reference paragraphs 1 through 62 above as if each and every allegation contained in those paragraphs were set forth in full herein.

64.     Section 533 of the California Insurance Code ("Section 533") states that "[a]n insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

65.     The Underlying Complaint uses words such as "deceptively," "exploited," and "fraudulent" to describe the TCAs' conduct.

**COMPLAINT FOR DECLARATORY JUDGMENT**

66.     The Underlying Complaint therefore alleges wilful acts by the TCAs for the purpose of collecting fines or intentionally performed with knowledge that the collection of additional fines was highly probable or substantially certain to result.

67.     Thus, the Underlying Complaint alleges conduct that is wilful within the meaning of Section 533.

68.     Because the Underlying Complaint seeks relief caused by the wilful acts of the insureds, Associated is entitled to a declaration that it has no duty to indemnify any TCA Defendant for any judgment entered against any of them in the Underlying Action that is premised upon willful acts.

### FIFTH CAUSE OF ACTION -- DECLARATORY JUDGMENT
### ANY COVERAGE IS LIMITED TO A SINGLE POLICY PERIOD

69.     Associated repeats, re-alleges and incorporates by reference paragraphs 1 through 68 above as if each and every allegation contained in those paragraphs were set forth in full herein.

70.     In the Class Certification Order, the Court limited the Certified Privacy Class to those consumers who used the toll roads operated by the TCAs "between April 13, 2015 and now."

71.     The **INSURING AGREEMENT** of each of the Associated Policies applies only if the "Personal Injury" is caused by an "Occurrence" during the "Policy Period."

72.     The Associated Policies define "Occurrence" with respect to "Personal Injury," to state that: "all 'Damages' arising out of the same 'Personal Injury' regardless of frequency, repetition, the number or kind of offenses, or number of claimants, will be considered as arising out of one 'Occurrence.'"

73.     The Associated Policies define "Occurrence" with respect to "Public Officials Errors and Omissions" as "an act, omission or failure to act during the 'Policy Period' which results in liability or 'damage.'"

**COMPLAINT FOR DECLARATORY JUDGMENT**
G:\18-073 Associated Industries v. Toll Roads\Pleading\Complaint.doc

74.     The Certified Privacy Class is limited to consumers who used the toll roads operated by the TCAs between April 13, 2015 and now.  Therefore, no coverage can apply under the Associated Policies issued for the September 29, 2011 – September 29, 2012 policy period, the September 29, 2012 – September 29, 2013 policy period, or the September 29, 2013 – September 29, 2014 policy period.

75.     The Associated Policies issued to the TCAs for the September 29, 2016 – September 29, 2017 policy period were endorsed to include the following exclusion:

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of :

(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

…

(2) "Personal injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including parents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

76.     If and to the extent that the Underlying Action to seeks "Damages," Damages would arise out of the disclosure of persons' confidential or personal information.  Thus, if and to the extent the **INSURING AGREEMENT** of either of the Associated Policies issued for the September 29, 2016 – September 29, 2017 policy period could be satisfied, and if and to the extent that no other exclusion to coverage applies, the "Access Or Disclosure Of Confidential Or Personal

**COMPLAINT FOR DECLARATORY JUDGMENT**
G:\18-073 Associated Industries v. Toll Roads\Pleading\Complaint.doc

Information And Data-related Liability" exclusion in both policies would bar coverage.

77.     Furthermore, the Associated Policies define "Occurrence" to state, "[O]nly one policy issued by the 'Company' and one limit of insurance is applicable to any one 'Occurrence.'"

78.     The Associated Policies' definition of "Occurrence" deems all "Personal Injury" alleged in the Underlying Complaint to arise out of one "Occurrence," and it further states that only one Associated Policy and one limit of insurance applies to any one "Occurrence."

79.     Therefore, if and to the extent that any coverage could apply under the Associated Policies, such coverage would be limited by the **INSURING AGREEMENT** of each of the Associated Policies to one limit of insurance under one Associated Policy.

80.     Moreover, Exclusion CC. to the Associated Policies states that "[t]his policy does not apply" to "any liability that is provided for or covered under any subsequent, replacement or renewal policy or policies issued by [Associated]…."

81.     Each of the SJHTCA Renewal Policies is a renewal of the SJHTCA Original Policy and each of the preceding SJHTCA Renewal Policies.

82.     Each of the FTCA Renewal Policies is a renewal of the FTCA Original Policy and each of the preceding FTCA Policies.

83.     Therefore, if and to the extent that the TCA Defendants are found liable to the Certified Privacy Class and if and to the extent that any such liability could somehow be covered under any Associated Policy, such liability would be excluded under all but the last applicable Associated Policy.

84.     Thus, if and to the extent that coverage could apply under any of the Associated Policies for the Underlying Action, such coverage would be limited to: (a) a single Associated Policy and a single per "Occurrence" policy limit for any judgment that could be entered against FTCA and; (b) to a single Associated Policy

**COMPLAINT FOR DECLARATORY JUDGMENT**

and a single per "Occurrence" policy limit for any judgment that could be entered against SJHTCA.

### SIXTH CAUSE OF ACTION -- REIMBURSEMENT

85.     Associated repeats, re-alleges and incorporates by reference paragraphs 1 through 84 above as if each and every allegation contained in those paragraphs were set forth in full herein.

86.     Associated agreed to fund the TCA Defendants' defense in connection with the Underlying Action subject to a complete reservation of Associated's rights, including the right to obtain reimbursement of any attorneys' fees and/or costs of defense incurred by Associated.

87.     If and to the extent that the Associated Policies do not provide coverage for the Underlying Action, Associated is entitled to reimbursement from the TCA Defendants for the full amount of all attorneys' fees and costs of defense Associated has expended.

### PRAYER FOR RELIEF

WHEREFORE, Associated Industries Insurance Company respectfully requests this Court to:

A.     adjudicate and declare the rights and obligations of the parties hereto under the Associated Policies, if any;

B.     find and declare that Associated is under no obligation to provide coverage to any of the TCA Defendants for the claims made in the Underlying Action;

C.     find and declare that Associated is under no obligation to pay any judgment entered in the Underlying Action on behalf of any of the TCA Defendants;

**COMPLAINT FOR DECLARATORY JUDGMENT**

D.      order the TCA Defendants to reimburse Associated for any attorneys' fees and costs of defense incurred by Associated in connection with the Underlying Action;

E.      in the Alternative, find and declare that, to the extent there is any potential for coverage under the Associated Policies, such coverage is limited to one Associated Policy; and,

F.      award any and all such other relief that the Court may deem just and proper.

DATED: September 28, 2018      Respectfully submitted,

ASSOCIATED INDUSTRIES
INSURANCE COMPANY

By:  /s/ *William J. Penisten*
        William J. Penisten, Esq [SBN 266857]
        wpenisten@morrow-white.com
        MORROW & WHITE
        535 Anton Boulevard, Suite 1150
        Costa Mesa, CA 92626
        Telephone:  (714) 979-7999
        Toll-Free:    (855) 265-4926
        Facsimile:   (714) 979-7779

        *LR 83-2.1.3 admission to be sought:*
        EDWARD F. RUBERRY (Ill. No. 2411547)
        ed.ruberry@ruberry-law.com
        ROSTYSLAW J. SMYK (Ill. No. 6255495)
        ross.smyk@ruberry-law.com
        RUBERRY STALMACK & GARVEY LLC
        10 South LaSalle Street, Suite 1800
        Chicago, Illinois 60603
        Telephone:  (312) 466-8050
        Facsimile:   (312) 466-8055

        Attorneys for Associated
        Industries Insurance Company

**COMPLAINT FOR DECLARATORY JUDGMENT**
G:\18-073 Associated Industries v. Toll Roads\Pleading\Complaint.doc